RECEIVED
IN ALEXANDRIA, LA
APR 24 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| PAUL A. TARPLEY,<br>Appellant | CIVIL ACTION<br>NO. CV05-1224-A |
| VERSUS | |
| JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL SECURITY,<br>Appellee | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Paul A. Tarpley ("Tarpley") filed an application for disability insurance benefits ("DIB") on September 14, 2001, alleging a disability onset date of June 1, 2001 (Tr. p. 62), due to residuals from a stroke in October 1999 (unable to balance and falls often, and unable to write legibly), high blood pressure, and back problems (Tr. p. 87). That application was denied by the Social Security Administration ("SSA") (Tr. p. 40).

A de novo hearing was held before an administrative law judge ("ALJ") on April 7, 2003 (Tr. p. 240), at which Tarpley appeared with a vocational expert ("VE"). The ALJ found that Tarpley engaged in substantial gainful activity until December 22, 2002, and that he has "severe" impairments of residual effects of a stroke, depression, attention deficit hyperactivity disorder ("ADHD"), anxiety disorder, cognitive disorder, and coronary artery disease (Tr. p. 31). The ALJ further found that, since Tarpley has

the residual functional capacity to perform light work that does not require him to carry out complex instructions or have more than limited interaction with the general public, or require more than occasional climbing, balancing or fingering with the right hand, he can perform his past relevant work as a companion/sitter (Tr. p. 37).

Tarpley requested review of the ALJ's decision. The Appeals Council reviewed the ALJ's decision and reversed it in part (Tr. pp. 10-12). The Appeals Council found, contradictory to the ALJ, that Tarpley has not engaged in substantial gainful activity since December 21, 2001, that he was found disabled in a subsequent application for benefits as of May 19, 2003, due to the late effects of a cerebral vascular accident, and that between December 21, 2001, and May 19, 2003, Tarpley was able to perform a reduced range of light work and could perform his past-relevant work as a companion-sitter, and that he has met Listing 11.04B since May 19, 2003 (Tr. pp. 11-12). The Appeals Council's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Tarpley next filed an appeal in this court, requesting judicial review of the Commissioner's decision. Tarpley raises the following issues for appellate review:

> 1. The Appeals Council erred in finding Tarpley's work efforts commencing May 21, 2002 and ending December 21, 2002, constituted substantial gainful activity.

2

2. The Appeals Council erred in finding Tarpley's past work experience as a sitter/companion was relevant to these proceedings.

3. The Appeals Council erred in evaluating the severity of Tarpley's mental and physical impairments prior to May 16, 2003.

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for

that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

## Summary of Pertinent Facts

Tarpley was 56 years old at the time of his April 2003 administrative hearing, has a Master of Arts degree in Education Administration, and has past relevant work as a school teacher (1994-1995, 1998-2001), working for an oil service company (1995-1997), and as a companion/sitter (2002) (Tr. pp. 245-252).

In 1998, Tarpley had six stents inserted into his coronary arteries to correct blockages (Tr. P. 214). In 1999, Tarpley underwent a successful cervical fusion (Tr. p. 214). About two weeks later, Tarpley suffered a stroke, apparently in his sleep (Tr. pp. 214, 225); the motor function in the right side of

Tarpley's body was affected, with subsequent motor uncoordination (Tr. p. 225). Although Tarpley underwent extensive physical therapy, his handwriting is significantly affected and he drags his right leg when he is tired (Tr. p. 225). Since the stroke, Tarpley has also had mild memory difficulties and some difficulty in concentration, and has problems maintaining his balance when walking (Tr. p. 225).

A neurological exam by a neurologist, Dr. Arsham Naalbandian, in November 2002 revealed residual mild right hemiparesis[1] and motor dysfunction, and subjective memory dysfunction. Dr. Naalbandian also found Tarpley can lift/carry less than ten pounds, stand and/or walk less than two hours in an eight hour day, his ability to push and pull with both his upper and lower extremities is limited, he should never climb, balance, crouch, crawl, or stoop, he can only occasionally kneel, reach, handle objects, finger objects, and feel objects, and should only have limited exposure to temperature extremes, noise, dust, vibration, humidity, hazards such as machinery and heights, and fumes, odors, chemicals, and gases (Tr. pp. 228-231).

In 2001, Tarpley's cardiovascular exam was normal (Tr. p.

---

[1] "Hemiparesis" is muscular weakness or partial paralysis restricted to one side of the body. MEDLINEplus Health Information, Merriam-Webster Medical Dictionary: Hemiparesis, *available at* http://www.nlm.nih.gov/mplusdictionary.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

202), but in February 2002, his cholesterol was elevated and he was suffering from arthritis (Tr. p. 200).

In March 2001 Dr. Marco A. Ramos, a neurosurgeon, noted Tarpley's continuing difficulties with writing as well as his tendency to fall, and stated that, on reviewing Tarpley's chart, it was obvious that his stroke involved the basal ganglia[2] and he was afraid the deficit was permanent (Tr. pp. 138-139). Dr. Ramos encouraged Tarpley to maintain his current level of activities as long as he could (Tr. p. 139). By June 2001, Tarpley reported problems with ambulation, short term memory, writing, and intermittent stuttering; Dr. Ramos stated the problems were probably secondary to the changes demonstrated in the basal ganglia on the MRI (Tr. p. 238).

Tarpley worked as a sitter with the developmentally disabled, from May 21, 2002 until July 13, 2002, when he was fired for two incidents of not reporting client falls and because he did not disclose his disability to his employer (Tr. pp. 248-249), then worked as a sitter for another company from July 13, 2002, until

---

[2] Basal ganglia dysfunction involves dysfunction of the basal ganglia, a brain region involved in motor control and movement. When the basal ganglia are damaged, control over functions such as speech and movement may be impaired. Any insult to the brain can potentially damage the basal ganglia, including strokes. MEDLINEplus Health Information, Medical Encyclopedia: Basal Ganglia Dysfunction, *available at* http://www.nlm.nih.gov/medlineplus/encyclopedia.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

December 21, 2002, when he was again discharged, apparently due to his inability to write well enough to fill out a time sheet (Tr. pp. 249-250). Tarpley also taught middle school from November 2001 through August 2002, but was fired due to his inability to write on the blackboard and because he fell a few times (Tr. p. 250).

Tarpley also suffers from depression and anxiety (Tr. pp. 233-238). In August 2002, Dr. Lynn Goodin, a psychiatrist, found Tarpley had marked limitations in his ability to carry out detailed instructions and to make judgments on simple work-related decisions due to his problems with attention and concentration as well as interpersonal problems (such as with authority) (Tr. p. 203). Dr. Goodin further found Tarpley had moderate limitations in his abilities to interact appropriately with the public and with supervisors, and to respond appropriately to work pressures in a usual work setting, and had marked limitations in his abilities to interact appropriately with co-workers and to respond appropriately to changes in a routine work setting, and also noted that he had a writing impairment (Tr. p. 204).

Tarpley was also evaluated by Dr. Daniel Lonowski, a psychologist, in November 2002. Dr. Lonowski administered a mental status exam, a Weschler intelligence quotient test, and an MMPI-II exam, and noted Tarpley had been undergoing outpatient psychiatric treatment with Dr. Lynn Goodin for several years and had been diagnosed with attention deficit hyperactivity disorder six years

ago (Tr. pp. 213-214). At Axis I,[3] Dr. Lonowski diagnosed depressive disorder NOS, anxiety disorder NOS, cognitive disorder NOS, and history of ADHD. Dr. Lonowski also noted a possible personality disorder NOS at Axis II, history of cardiovascular accident, elevated cholesterol, history of atherosclerosis, and history of two cervical fusions at Axis III, stress secondary to a pending divorce at Axis IV, and a current GAF of 75 at Axis V (Tr. p. 214).[4] Dr. Lonowski found that Tarpley has moderate limitations in his ability to understand and remember detailed instructions and to carry out detailed instructions, and a moderate limitation in

---

[3] The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. Diagnostic and Statistical Manual of Mental Disorders, Text Revised, pp. 25-30 (4th ed. 2000) ("DSM-IV-TR"). Axis I refers to clinical syndromes, Axis II to developmental disorders and personality disorders, Axis III to physical disorders and conditions, Axis IV to psychosocial stressors, and Axis V to the global (overall) assessment of functioning. Diagnostic and Statistical Manual of Mental Disorders, Text Revised, pp. 27-35 (4th ed. 2000) ("DSM-IV-TR").

[4] The Global Assessment of Functioning, or GAF, score represents Axis V of the Multiaxial Assessment system. The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. Diagnostic and Statistical Manual of Mental Disorders, Text Revised, pp. 25-30 (4th ed. 2000) ("DSM-IV-TR"). GAF is a standard measurement of an individual's overall functioning level. The GAF score is a subjective determination that represents the clinician's judgment of the individual's overall level of functioning with respect to psychological, social and occupational functioning, on a hypothetical continuum of mental health-illness. The GAF scale goes from 0-100; a GAF of 71-80 means that, if symptoms are present, they are transient and expectable reactions to psycho-social stressors, not more than slight impairment in social, occupational, or school functioning. DSM-IV-TR, at 32-34. Also, Boyd v. Apfel, 239 F.3d 698 (5th Cir. 2001).

his ability to respond appropriately to work pressures in a usual work setting, but seemed capable of performing light duty work (Tr. p. 217).

In November 2002, Tarpley was evaluated by Dr. Arsham Naalbandian, a neurologist, regarding Tarpley's history of cerebrovascular disease (Tr. p. 225). Dr. Naalbandian found Tarpley had residual mild right hemiparesis and motor dysfunction and subjective memory dysfunction which needed further evaluation (Tr. p. 227). Dr. Naalbandian found Tarpley can lift/carry less than ten pounds, stand and/or walk less than 2 hours in an 8 hour workday, can sit any length of time, his ability to pus and/or pull with his upper and lower extremities is limited, he should never climb, balance, crouch, crawl or stoop, and can only occasionally kneel, his abilities to reach, handle, finger and feel are limited and should only be done occasionally, and he should have only limited exposure to extreme temperatures, noise, dust, vibration, humidity and wetness, hazards such as machines and heights, and fumes, odors, chemicals, and gases (Tr. pp. 227-231).

On May 21, 2003, Tarpley was admitted to a nursing home due to his inability to care for himself (Tr. p. 239). At that time, Dr. Joseph M. Tarpley, an internist and the E.R. Director of the LaSalle General Hospital, diagnosed Tarpley with coronary artery disease with stents, narcolepsy, hypertension, memory loss, lack of coordination, and depression, and his limitations were found to

include the inability to make rational decisions, and the inability to obtain and hold employment due to severe cognitive and physical defects (Tr. p. 239). Dr. Tarpley stated that Tarpley is unable to live alone because he falls and cannot get up, he cannot regulate his medication schedule, and he does not have any family that is able to help him (Tr. p. 239).

## Law and Analysis

### Issue No. 1 - Past Relevant Work as Companion/Sitter

Tarpley contends the Appeals Council erred in finding Tarpley's work efforts commencing May 21, 2002, and ending December 21, 2002, constituted substantial gainful activity and past relevant work.

The Appeals Council found that Tarpley was still able to perform his "past relevant work" as a companion/sitter from May 21, 2002 though December 21, 2002. The Appeals Council stated the record revealed Tarpley "was working at the substantial gainful activity level from May 21, 2002 through December 21, 2002" but did not discuss why it found Tarpley's two jobs as a companion/sitter, each held for less than six months, constituted substantial gainful activity. The Appeals Council found Tarpley has past relevant work as a companion/sitter for seven months, which he could have continued to do until May 19, 2003, the date he was determined to be disabled pursuant to his subsequent application. The sequential analysis thus ended at Step 4, with a finding that Tarpley was not

disabled prior to May 19, 2003.

First, it is noted that Tarpley held two different jobs in the period from May 21, 2002 through December 21, 2002. The Appeals Council apparently considered Tarpley's work as a companion sitter as one job which lasted for more than six months. Since, pursuant to 20 C.F.R. 404.1574(c)(5), work which lasts for more than six months cannot be considered an unsuccessful work attempt, the Appeals Council concluded Tarpley had past relevant work as a companion/ sitter.

However, at the first job, Tarpley worked less than two months, from May 21, 2002 until July 13, 2002, then was fired for two incidents of not reporting a client's fall's and because he did not disclose his disability to his employer; the second reason was clearly due to Tarpley's disability. Pursuant to 20 C.F.R. 404.1574(c)(3), defining "unsuccessful work attempt,"

> "3) If you worked 3 months or less. We will consider work of 3 months or less to be an unsuccessful work attempt if you stopped working, or you reduced your work and earnings below the substantial gainful activity earnings level, because of your impairment or because of the removal of special conditions which took into account your impairment and permitted you to work."

Therefore, Tarpley's first job as a companion/sitter was an unsuccessful work attempt.

Tarpley then worked as a sitter for a different company for less than six months, from July 13, 2002, until December 21, 2002, when he was again discharged due to his inability to write; Tarpley

was unable to even fill out a time sheet. Pursuant to 20 C.F.R. 404.1474(c)(4),

> "(4) If you worked between 3 and 6 months. We will consider work that lasted longer than 3 months to be an unsuccessful work attempt if it ended, or was reduced below substantial gainful activity earnings level, within 6 months because of your impairment or because of the removal of special conditions which took into account your impairment and permitted you to work and-
> (i) You were frequently absent from work because of your impairment;
> (ii) Your work was unsatisfactory because of your impairment;
> (iii) You worked during a period of temporary remission of your impairment; or
> (iv) You worked under special conditions that were essential to your performance and these conditions were removed."

According to Tarpley, someone filled out his time sheet for him at first, but when that was discontinued, he was unable to do so on his own due to his impairments. Therefore, Tarpley's second job as a companion/sitter was also an unsuccessful work attempt.

Therefore, the Appeals Council erred in concluding Tarpley's work as a companion/sitter was past relevant work when it was, in fact, two unsuccessful work attempts. Since the Appeals Council's conclusion that Tarpley could work from June 1, 2001, until May 19, 2003, was based solely on the erroneous finding that Tarpley was able to work as a companion/sitter during that time frame, that conclusion is also erroneous.[5] Since Tarpley was denied benefits

---

[5] It is also noted that, according to the Dictionary of Occupational Titles, 309.677-010, the job of companion/sitter requires frequent fingering, something which Tarpley's doctors have agreed he cannot do more than occasionally due to the

12

pursuant to that erroneous finding substantial evidence does not support the Commissioner's decision to deny Tarpley benefits from June 1, 2001 until May 19, 2003.

Since substantial evidence does not support the conclusions of the ALJ and the Appeals Council, their decision is incorrect as a matter of law. However, this does not entitle Tarpley to a decision in his favor based upon the existing record. The record is simply inconclusive as to whether there are any jobs existing in sufficient numbers in the national economy which Tarpley could perform from June 1, 2001 until May 19, 2003, given his impairments. Therefore, Tarpley's case should be remanded to the Commissioner for further proceedings.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be VACATED and that Tarpley's case be REMANDED to the Commissioner for further proceedings.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District

---

physical limitations resulting from his stroke.

Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 21st day of April, 2006.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE